We raise three issues in this appeal regarding the sentencing of Mr. Spencer by the District Court. We raise three issues on this appeal, all related to his sentencing. The first concerns untested drugs being counted as relevant conduct for purposes of sentencing. That was from a control buy by a government agent approximately four months prior to the offensive conviction for one ounce of cocaine. The second issue is that with respect to the same drugs, in addition to not being tested, they are not part of either a common scheme or plan or the same course of conduct. The third issue is the breach of the government's plea agreement. The information in the record shows that there was allegedly an informant that said that the two defendants were part of a large conspiracy in the Austin Texas area distributing various drugs. Supposedly this statement was made in March of twenty twenty two. There are only two single transactions in the record and produced by this government in discovery. The first first was a controlled controlled by by government agent of two thousand pills all uniform in appearance and markings on all colored orange. The control by was allegedly for Adderall counterfeit Adderall, but the pills were never tested. And so we don't know what they contained. There's no evidence that they contained any trace of a controlled substance. Approximately four months later, in October of twenty twenty two, the government set up a by bust operation of a single ounce of cocaine. The transaction took place in a different location. The modus operandi was different.  Co-defendant was involved as the supplier of the single ounce of cocaine in the October by bust, whereas she had there was no evidence she had anything to do with the transaction involving the untested pills in the controlled by of June of twenty twenty two. Can we talk about the the June Adderall sales? Yes, they could be included as relevant conduct because there's a reliable to to say that the two cells are part of the same course of conduct. Can you talk about that? Yes, it's our position that they're neither the same course of conduct, nor a common scheme or plan. The factors for a common scheme or plan, if it's substantially connected to the offensive condition by at least one common factor. Victims, accomplices, purposes, or modus operandi. I don't, as we pointed out in the brief, there's no similarity between either transaction other than one. Each involves the defendant appellant, Cody Lee Spencer. One is for Adderall, the other's for cocaine. The locations are different. The way the transaction was set up was different. The exchange was different. There's no connection to the co-defendant. I think it's clear that it does not meet the test of common scheme or plan. As far as a common course of conduct, that requires a degree of common similarity, common regularity, and the temporal proximity. So the only factor that could possibly come under those three as being met in this instance would be the temporal proximity just based on prior holdings of this court, finding that transactions within one year of the offensive conviction could be sufficiently close in time to be part of the common course of conduct. But there's otherwise no degree of similarity or regularity. There's two transactions, as I point out. The way they did the transaction was different. The drug is different. There's no information as to who supplied the untested pills. I suppose the only other similarity would be there was a government agent involved in each transaction. You can't conspire with a government agent. Let me ask you, if you can convince us that the government breached the fully agreement and we have to vacate the sentence, do we have to send it back to a different judge? I believe from the prior holdings of this court, that is the, I mean, in getting ready for this argument, I thought that perhaps I probably should have moved to have the plea withdrawn, but that is, we elected to have the requested sentence be vacated and be assigned to a different judge. And that's required by our precedent, and it's not saying anything bad about the judge. No, no. I have no complaints about Judge Pittman, and I presume it will go either to Judge Albright or possibly Judge Ezra. I just think based on the precedent, it is . . . Same district. Same district out of Austin. Judge Ezra sits in for many of the cases in Austin. He's . . . I forget what his status is. He's senior, but he's kind of . . . He knows Judge Ezra. Yes. Okay. Judge Ezra's work in Western District, which is a very busy district and needs help in Austin. Yes. The clarity of that. Speaking to your question as to, yes, it does have to go to a different judge, and yes, we believe the plea agreement was breached based upon the promise of the prosecutor. So what exactly do you want the government to do if they did send it back? What should they do? I want to mandate that the drugs are not to be included as relevant conduct, because based on my experience with my last appeal, probation just said essentially, if not quoting, the Court of Appeals can't tell us what to do. We decide what's relevant. I thought they were just supposed to seek a motion for downward departure, not necessarily argue about what you just said. As far as the government and the breach?  If the government files the motion they were supposed to file, I thought it was just to bring it down, not to jump on what you just said. I apologize, Judge Haynes. I thought . . . I understood Judge Clint asking me what I wanted the Court to do, so I was doing that as a premise that I wanted a mandate. I was asking what you thought the government should do based on what they agreed to do. I apologize. I misspoke. That's okay. I feel that the government has to file a 5K motion for a downward departure to comply with their agreement. Once the sentence vacated, there's no prohibition to doing that in the government complying with their agreement. The sentence will be as if it never existed, so it would be a 5K rather than a Rule 35, which was the second agreement that they promised to make. Well, and we'll obviously ask them about it, but I'm just wondering, what's been your conversation with them about why this hasn't happened? The Rule 35? Well, any of it. Any of what you think they should have done. The conversation I had with the prosecutor, who has since retired, was basically he didn't care what he had promised before. It was coming up for sentencing the very next day. He said the cooperation was not complete, despite what he had said in the written agreement, which under Melton is part of the plea agreement, even though I think they used the term plea agreement proper, the one that's submitted to the court. He . . . That one didn't require future cooperation. That's a friendly question. I'm sorry. Judge Elrod. I said it didn't require future cooperation, so that was no reason to decline to do it. That's a friendly question. Yes. Well, his agreement was he agreed to testify at the trial of Williams, not I agree to testify so long as I'm still in custody, not I agree to testify if you can find me. It's I agreed to testify at her trial. But there was no trial. There was not a trial. Thirteen days after Spencer pled, Williams pled. So that fell within the Rule 35, the second agreement, that either she pled or was tried and he would testify. And of course, so you were asking me what the government's reaction was. That was the exchange we had the day before. It was a surprise to me that the government hadn't made the Rule 5K. I was only alerted to it by probation. Excuse me. I just need to grab some water. At the hearing itself, it was, the reaction was anger that, you know, that, and they're accused of breaking his word. And if you reviewed the record, I tried to defuse that. I kept saying, well, I'm sure he's going to keep his, he'll do the Rule 35, but we have to object to his breach as of now. And so that was his reaction, anger. No conversation subsequent to it. In all honesty, I didn't even know about the indicative ruling doctrine until I went to file my reply. So it was, I'm sorry, I'm still relatively new at the criminal world, but it was, I think I took the position in the blue brief that, look, CJA attorneys, our appointment ends upon sentencing. So there's no way for us to monitor a Rule 35. But that's the government's obligation to keep its word. So they had the obligation to fulfill the second agreement, which was to move for a Rule 35 after the sentencing of the co-defendant Williams, which they failed to do. And that year has passed. The motion cannot be made. So the only thing that can be done in order to, for the government to keep its agreement is for this court to vacate the sentence and the government to make the 5K motion that it promised to make after the resentencing. Assuming, I don't know if there's any more questions on the 5K. I want to go back to the drugs. You know, there are two sales and two offers of sale that either discussed or included both amphetamine and cocaine. And why isn't that enough to say that there is a course of conduct for Spencer? What are we missing? What does my question miss? In the record and in the report of the, the report of investigation of the control buy of June of 2022, apparently Spencer made statements that, look, I'll hook you up with whatever you want. I'm paraphrasing, of course. Future cocaine purchases were discussed in these alleged control buys or whatever May and June. But no cocaine sales were made. But they were said, I can hook you up for future cocaine in the same conversation with the amphetamine. So why isn't that good enough? Because it's not a course of conduct. It's not a common scheme. It's just an offer. Is there a case that says that that's not a course of conduct when they're discussing both things in one conversation with the same person that they're doing the deal with? I'll confess I can't cite a case like that off the top of my head. Maybe during my rebuttal I can find it, but I don't have one for the court. How do you know it's not a course of conduct if you're not relying on a case? If the four things, four times, and two of them, they're definitely discussing the cocaine and the amphetamine in the deal, why isn't that good enough? I think the degree of the similarity between an offer and an actual sale of cocaine might be there, but I think that the degree itself is insufficient in those two instances. There's no regularity, and time interval, as I concede, is less than a year, but that's basically almost anecdotal when you get down to it. It's like, well, in prior cases we held this was seven months, so that's okay, or this was less than a year, and that's okay, but there's really not a construct of that concept of being less than a year as to why that is so, what the reasoning is behind that. All I can do is recognize that it has been done, and that statement has been made by this court. Well, it's less than a year. Of the factors of course of conduct, I would say that's the only one, and based on everything else in the case, the requirements are not met. Neither is a common scheme or plea met either, that the factors aren't present in that case. I'm sorry, I thought you were going to ask a question.  You've saved time for rebuttal if you want to wrap it up. Oh, I'm sorry. I missed the signals. I'll save time for rebuttal. Okay. Thanks. Ms. Durbin? May it please the Court, Laura Durbin for the United States. I'd first like to start with the breach of plea claim. As the Court's well aware, the United States has moved to vacate the sentence and remand for further proceedings specific to the agreement. I'm not authorized to concede there was a breach and I'd like to go through those reasons why. I'm not saying we should treat it like it was. The only thing that was different than what you asked for is you wanted this trial court to make some findings. And I think that's . . . So that's what . . . that's not . . . we would just send it back for a do-over, wouldn't we? I don't . . . If the Court finds there is a breach, it has to go . . . it goes back down to a different judge. If the Court decides from this record it is unclear what the agreement was and where the breach occurred, it can go back to Judge Pittman and he can determine for the first time what was the agreement, what was the breach, and if there was a breach, what is the best cure for that breach. But if we already think we know that there was a breach . . . If the Court . . . I'm not saying we do. I'm not foreshadowing. No. That's not what would happen, right? That's not what would happen. If the Court decides there's a breach, it goes back to a different judge for resentencing. And the only . . . the reason the government is presenting this option is . . . because it's . . . the option that was in the motion to vacate is that it's not clear exactly what the parties agreed upon. There was the initial email where it's clear, and if any ambiguities are construed against the government, it is clear there was an agreement for the 5K motion, a low incidence guideline, and I forget, but there was a third thing, the agreement to testify. Why are we doing that? Why are we doing this? Why is that just happening? It's horrible practice. We're having a whole . . . it's horrible practice, you're saying, of your office? It's . . . this is not the practice of the office. The practice of the office is any agreement should be in the plea agreement, in writing, and discussed at the rearrangement, before the defendant enters the plea. So they . . . so it was sloppily, sloppily executed. It was sloppily executed. It has now led us to spend all this time on appeal. Yes. The case is a mess, and I recognize that, and I'm trying to help the court get to the best resolution possible in the most expeditious way. What's your position on the emails that they tried to include? In the brief, we characterized the emails as modifications, and I think that we can't . . . we can't now turn around and argue, oh, they weren't part of the plea agreement. We are saying they were part of the plea agreement. The problem that the emails presents is the agreement changes throughout the course of the litigation. There's the first initial emails in January. When we get to the rearrangement, I believe that's on page 3, around 360 of the record, the court specifically asked the parties, is the written plea agreement the extent of the agreement? Yes. Is there any agreement as to sentencing? No, Your Honor. The court asked . . . That wasn't accurate, but it presents a problem for on this record, what was the agreement? Then, we get to sentencing, and there's additional emails. There's phone calls that we don't know what that conversation was on this record that say, we're not going to move for the 5K. The cooperation is not complete. I don't know why the government, the prosecutor is saying that when there's the prior email in January saying for prior cooperation. So, he doesn't understand what he's agreed to. The cooperation is not complete. We'll move for Rule 35. We get to sentencing. There's an objection at sentencing. It's not really explored. The district court asks, are you saying there's a breach of plea? That's a serious accusation. The prosecutor responds, well, we'll just try it. That's not the correct response. I mean, I have to say, the government should not have said it wouldn't file the 5K motion because the cooperation was not complete. That's just wrong. It's wrong. And so, we need to just get this back on track. Right. And why can't we get it track just to start over from the thing from what the deal was? I think the court can do that. There's nothing stopping the court from doing that. And wouldn't that be the easiest thing to do here given the fact that the government is at least responsible for a decent part of this? I cannot say that we aren't. And I'm not fussing at you. You understand that. I understand that. The reason I present it as not outright saying there was a breach is to allow the district court that opportunity. Because the district court didn't really have the opportunity to explore the agreement, the breach, and the cure. Okay. Well, it seems like the cure would be to get it back to the original agreement that you get the 5K. And you get the lower thing. What you articulate at the very beginning of your argument, what the deal was, that's what should be the deal since you can't get the 35. At this point, the rule 35 is down. That's the only thing that can happen. Yes. That would honor the deal. Yes. Okay. I asked him about why wasn't the 5K done. You don't know either, do you? I don't know. We tried multiple times to contact the attorney in the case, and we just didn't have any success before I came forward. The one who retired? The one who retired. So maybe this was just a little bit of a floppy for him. I don't want to characterize his conduct without talking. I just don't want to do that. And we appreciate you're in a difficult spot. Right. Can you answer questions about whether or not these other deals with the cocaine and the Adderall can all be in the same? The relevant conduct question? Yeah, the relevant conduct. And then it goes into the quantities. The quantities. Can you just quickly discuss those, please? With the relevant conduct, I think Judge Elrod, you're exactly right. We have in May of 2022 a discussion of between Mr. Spencer and UC, I can get you Adderall, just let me know when. In June, the Adderall is provided. He is discussing at that moment the next sale, and that next sale is the October cocaine purchase. And I think from that, it's clear that the district court could plausibly infer that Mr. Spencer was engaged in this common scheme, in this course of conduct of drug trafficking, of different drugs, including Adderall and cocaine. They were only four months apart. And specific to the Adderall, it was seized in, or that was part of the buy in June of 2022, and then that seized in October of 2022. They are both similar in color, in size. They have similar markings. Do you have a case that you would offer to us that would give us some comfort that this is correct to include these things several months apart? Barfield is a good case, both for the relevant conduct question and the extrapolation question. And it's also the temporal proximity, too. Wall is another case, though. That is, it wouldn't, it kind of, it's the outer limits of this is not, this is not temporally proximate. But discusses within a year on drugs transactions is generally accepted by the court to be a temporal link. Specific to the extrapolation question, the drug quantity question, the court could plausibly infer that what Mr. Spencer sold in June was Adderall. I want to point out the guidelines contemplate themselves that not every drug quantity that's attributed to the defendant is going to be tested. The question is, was it a reasonable inference for the district court to make here? And based on the similarity of what was seized in October and what was seized in June, the court reasonably inferred that this was Adderall. That Mr. Spencer was engaged in this course of conduct of selling controlled substances, including Adderall. If this goes back to a district court, is it your position that you would honor the commitment for the 5K letter and the Rule 35? Yes. Yes. Do you have any idea whether Mr. Spencer still wants to plead? He hasn't moved to withdraw his plea agreement. He's asking for specific performance for the 5K, and so that's what we would honor. The drawing of the plea is something he hasn't sought relief for. Thank you. Thank you. We have your argument. Okay. Thank you. With respect to the rulings of the district court on the breach of the plea agreement, it's our position that the record is clear. The court overruled the objections to the drugs at pages 142 and 143 of the record. At page 148 of the record, after defense made its objections to the breach of the plea agreement, the court stated that it overruled that objection. The prior objections had already been made. The record is sufficiently clear for this court to review it under a clear error standard. If this court is troubled by the record and for the reasons— Why don't you want us to send it back as they're requesting? I was a little confused about why you all didn't want that. I do want it sent back for specific performance. I don't mean to misspeak. I'm just saying that I don't want it sent back for clarification from the district court. I think the record is clear for this court to find that it was error for the government to breach and error for the court to overrule it. You didn't want it to go back for other findings and things, but you do want it to go back for specific performance of the 5K. You want it to go back for that, and they're not in a position to conceive that, but they understand why we might do that. Right. That is correct, Judge Elrod. I want it to go back. I want resentencing. I want specific performance by the government upon resentencing. I don't want it sent back just for a limited remand to determine whether or not the district court overruled the objection to the breach because it's our position and for the reasons I've given. That's clear on the record, even under a plain error standard under Puckett and Malmquist. If you look at the four factors, just looking at the government's breach, because that was the question in Puckett and that was the question in Malmquist, was the government's breach was reviewed for clear error, not the district court's ruling because it wasn't made. It wasn't brought to the attention of the district court. Under that, the plain error standard, that is sufficient. The error was not intentionally relinquished or abandoned. It was clear and obvious. It affected the defendant's substantial rights, and the error seriously affects the fairness, integrity, and public perception of the judicial proceedings. Under either standard, that ruling can be made by this court. We don't need a new determination by the district court as to what it meant when it said the objection was overruled. As far as the similarity on the drugs and the use of untested drugs, I think McGuire, the most recent decision by this court, shows that the methodology or lack thereof in this instance can't be relied upon to determine that. Despite any of the other factors under a common scheme or plan or common course of conduct, there's no evidence that these pills contain a controlled substance. Therefore, they cannot be converted. The pills that the counterfeit Adderall, he had following the search of his premises, under the standards of Rickey, and I think then under Anguillar, and then Griffin, that is personal use because the amount of methamphetamine that they contained was approximately 18 grams. Under Rickey, 5 to 10 is a personal dose, although it's not clear to me how the court made that determination in 1996. But under that ruling, the pills, the disparate in appearance and markings, orange pills described as counterfeit Adderall following the search, following the buy bust of October 2022, is at most two or three doses, so they are personal use as opposed to for distribution. So we ask the court to include in its mandate that those 2,000 pills are not relevant to the offense of conviction. And we ask that the sentence be vacated. Thank you. Thank you. We have your argument. We appreciate the arguments on both sides in this case, and we note that your court appointed and appreciate your service. Thank you. The case is submitted. Thank you.